IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Norton Outdoor Advertising, Inc.**, | : | Case No. 1:05cv401 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING PLAINTIFF'S |
| **Pierce Township, Ohio**, | : | MOTION FOR PARTIAL SUMMARY |
| | : | JUDGMENT AND GRANTING |
| Defendant. | : | DEFENDANT'S MOTION FOR |
| | | SUMMARY JUDGMENT |

This matter is before the Court on the parties' cross-motions for summary judgment.[1] For the reasons that follow, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS** Defendant's motion for summary judgment.

## I.      BACKGROUND

The issue in this lawsuit is whether the sign restrictions, permitting scheme, and variance procedure embodied in Defendant Pierce Township ("Pierce's") former Zoning Resolution violate Plaintiff Norton Outdoor Advertising, Inc.'s ("Norton's") constitutional rights and Ohio law.  Specifically, Norton alleges that Pierce's former Zoning Resolution restricts speech in violation of the First Amendment; deprives it and others of Equal Protection under the Fourteenth Amendment; deprives it and others of Due Process of Law in violation of the First, Fifth, and Fourteenth Amendments; violates 42 U.S.C. § 1983; and violates the Ohio

---

[1] *See* Plaintiff's motion for partial summary judgment (doc. 30), Defendant's response in opposition thereto and motion to disregard certain exhibits attached to Plaintiff's motion (doc. 43), and Plaintiff's reply in support (doc. 52).  *See also* Defendant's motion for summary judgment (doc. 41), Plaintiff's response in opposition thereto (doc. 44), and Defendant's reply in support (doc. 53).

1

Constitution and Ohio Rev. Code § 519.20.  Norton seeks declaratory judgment, an injunction, and damages.

The factual history is largely undisputed.[2]  Norton is an outdoor advertising business that leases or purchases real property for the purpose of erecting standard outdoor advertising signs known as billboards.  Pierce Township is a political subdivision of the State of Ohio located in Clermont County.  At the time of the events at issue in this case, Pierce had in effect a Zoning Resolution (the "Resolution") that was originally effective in 1961 and was modified with subsequent amendments.  The Resolution was revised in April 2006, but Norton does not challenge the revised version.

### A.     The Permitting Scheme

The Resolution states that "no land shall be occupied or used . . . for any purpose whatsoever until a zoning certificate is issued by the Township Zoning Inspector stating that the building and use comply with the provisions of this Resolution."  Resolution Art. XV, § 2.  As a result, before any person may display a sign in Pierce Township, he or she must apply for and receive a permit.  Before a permit may issue, the requested sign use must comply with the Resolution's sign restrictions.  Alternatively, the person seeking the permit must obtain a variance from the restrictions by the Township's Zoning Board of Appeals ("BZA").  Resolution Art. XIV, § 4, ¶ 2.

---

[2]  The following facts are drawn from Norton's Proposed Undisputed Facts (doc. 30, attachment 1) and Pierce's Response thereto (doc. 43, attachment 1), and Pierce's Proposed Undisputed Facts (doc. 41, Ex. X) and Norton's Response thereto (doc. 44, attachment 1).

2

**B.** **The Sign Restrictions**

None of the Resolution's articles expressly references "signs" in its title.  (*See* doc. 41,

Ex. B.)  To find the Township's sign restrictions, one must refer to Article III of the Resolution,

titled "General Provisions."  Paragraph 14 of Article III states:

> The regulations set forth in this Resolution pertaining to signs are
> to promote and protect the public heath, welfare, and safety of the
> Township by regulating existing and proposed outdoor advertising
> and signs of all types.  They are intended to protect property
> values, create a more visually attractive economic and business
> climate, enhance and protect the physical appearance of the
> community and preserve the scenic and natural beauty of
> designated areas.
>
> They also are intended to reduce sign or advertising clutter,
> distraction and obstructions that may contribute to traffic
> accidents, reduce hazards that may be caused by signs overhanging
> or projecting over the public right-of-way and permitting signs
> which are compatible with their surroundings.

Resolution Art. III, § 1, ¶ 14.  The nine subparagraphs that follow this introduction describe

permissible sign elements and specifications and include criteria for sign lighting, motion, size,

and location.  *See* Resolution Art. III, § 1, ¶ 14.1-14.9.  Of relevance to the instant action are

subparagraphs 8 and 9, which provide:

> 8.  In a Business or Industrial District each lot shall be
> permitted one (1) free-standing sign not over thirty (30) feet in
> height and located not closer than ten (10) feet to any street right-
> of-way line.  Each sign may have a display area equivalent to two
> (2) square feet of sign area for each lineal foot of road frontage.
>
> 9.  Outdoor advertising shall be classified as a business use
> and shall be permitted in the Business and Industrial Districts if
> such outdoor advertising is used in connection with such industry,
> business or trade located in Pierce Township and is so located
> upon the property so as not to constitute a hazard or nuisance to
> others.

Art. III, § 1, ¶ 14.8-14.9.[3]  For the purposes of this Order, the Court will refer to provisions of

subparagraph 14.8 as "size and placement restrictions" and the provisions of subparagraph 14.9

as the "off-premises exclusion."[4]

Norton entered into leases relating to three parcels of real property located in Pierce

Township for the purpose of erecting billboards on each parcel.  In January and February of

2005, Norton submitted to the Township applications for zoning certificates for each parcel.

Each application sought approval of a billboard with 672 square feet[5] of advertising space and a

minimum height of forty feet (the "Applications").

The Zoning Inspector denied all three of the Applications on the same day Norton

submitted them, noting on the Applications that they were rejected for failure to comply with the

size and placement restrictions set forth in Resolution Art. III, § 1, ¶ 14.8.  The specific reasons

the Zoning Inspector gave for denying the Applications were because (1) one freestanding sign

already existed on the parcels, and (2) each proposed sign exceeded thirty feet in height.

While Norton admits it was aware of the Resolution's size and placement restrictions

pertaining to freestanding signs, it asserts that it did not recognize or agree that those restrictions

applied to Norton's Applications.  Rather, it posits that application of the size and placement

restrictions to its billboard permit requests "was contrary to the clear intent of the Resolution

---

[3]  Subparagraph 9 is the Resolution's second reference to "outdoor advertising" and mirrors General Provision language found in Article III, § 1, ¶ 5.

[4]  An "off-premises" restriction is an ordinance's prohibition of signs that "direct[] attention to a business, commodity, or service offered at a location other than the premises on which the sign is erected."  *Prime Media, Inc. v. City of Brentwood*, No. 05-6343, slip op. at 2 (6th Cir. May 8, 2007) ("*Prime Media III*").

[5]  A standard billboard measures 14' by 48', or 672 square feet, according to Norton.

4

[because t]he only restriction specifically governing outdoor advertising is found in subpart nine [the off-premises exclusion]."  (Doc. 44 at 2.)

       **C.**     **The Variance Procedure**

Any person who deems himself adversely affected by a determination of the Zoning Inspector is entitled to appeal to the Pierce Township Board of Zoning Appeals ("BZA"). Resolution Art. XIV, § 3.  The BZA has the power "[t]o hear and decide appeals where it is alleged that there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this Resolution."  Art. XIV, § 4, ¶ 1.  Additionally, the BZA is entitled to grant a variance from the express terms of the Resolution "as will not be contrary to public interest, where owing to special conditions a literal enforcement of the provisions of the Resolution will result in unnecessary hardship, and so that the spirit of the Resolution shall be observed and substantial justice done."  Art. XIV, § 4, ¶ 2.

Norton appealed the denials of its Applications to, and sought variances from, the Pierce Township BZA.  Following a hearing on March 9, 2005, the BZA denied Norton's appeal and variance request.  Norton did not take an appeal from the BZA decision to state court.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The moving party

may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

"When the moving party bears the burden of persuasion at trial, the movant must satisfy this burden by pointing to evidence in the record that supports the movant's version of all material facts and demonstrates the absence of any genuine issue of material fact." *DeWitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126, 137 (D. Del. 1994) (*citing National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992)). "If the moving party does not meet this standard, the Court must deny the motion for summary judgment, even if the non-moving party does not present opposing evidentiary materials. In other words, the moving party with the burden of persuasion at trial must show that it would be entitled to a judgment as a matter of law." *Id*.

III.    **ANALYSIS**

A.    **Standing**

The Court first addresses Pierce's argument that Norton lacks standing to pursue its claims.  If Norton lacks standing on a given claim, then summary judgment must be granted for Pierce on that claim and summary judgment for Norton denied.

Norton claims in its Amended Complaint and in its Motion for Partial Summary Judgment that Pierce's off-premises, content-based sign restrictions are both facially unconstitutional and unconstitutional as applied.  (Doc. 22 ¶ 45).  Pierce responds that it did not apply the off-premises sign restrictions to Norton's Applications but rather denied the Applications based on Pierce's size and placement restrictions, which Norton does not specifically contest.  Accordingly, argues Pierce, Norton cannot show the prerequisites to constitutional standing to bring suit, namely, a constitutional injury-in-fact, causal link, or redressability.  Additionally, argues Pierce, because Norton cannot demonstrate constitutional standing, neither can it establish overbreadth standing.

1.    **First Amendment Claims**[6]

To establish constitutional standing, a plaintiff must show a concrete and actual injury-in-fact, causal connection, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

_____

[6] Commercial speech is entitled to First Amendment protection.  *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976).  The Supreme Court affords commercial speech a measure of First Amendment protection "commensurate" with its position in relation to other constitutionally guaranteed expression.  *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 553-54 (2001) (citations omitted).  Norton argues in its motion for partial summary judgment that the Resolution's sign restrictions are content-based and restrict both commercial and non-commercial speech.  Norton must first demonstrate that it has standing to pursue its First Amendment claims before this Court will engage in any analysis of whether the Resolution's sign restrictions impermissibly infringe upon First Amendment protections afforded to commercial and non-commercial speech.

(1992).  The parties do not dispute that Pierce's bases for rejecting Norton's Applications were that the signs exceeded the one-sign-per-parcel limit and the size/height restrictions.  Norton does not claim that the size and placement restrictions themselves are unconstitutional.  Rather, Norton's First Amendment claim is that the "content-based regulatory scheme . . . of the Zoning Resolution is overbroad and unlawfully restricts commercial and non-commercial speech." (Doc. 22 ¶ 40.)  The size and placement sign restrictions that the Zoning Inspector applied to reject Norton's Applications are not content-based.  Norton, therefore, did not suffer any injury causally related to the Resolution's content-based sign restrictions.  The question, then, is whether Norton has standing to assert its overbreadth claim regarding the constitutionality of the content-based, off-premises exclusion in the absence of an injury-in-fact causally linked to that exclusion.

With respect to First Amendment overbreadth claims, the Supreme Court has recognized that "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."  *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).  However, the overbreadth doctrine does not permit a litigant to dispense with the Article III requirement of standing.

Dealing with facts similar to those at issue here, the Sixth Circuit Court of Appeals recently discussed threshold standing requirements of a plaintiff asserting a First Amendment overbreadth claim.  *Prime Media, Inc. v. City of Brentwood*, No. 05-6343, slip op. (6th Cir. May 8, 2007) ("*Prime Media III*").  The plaintiff in *Prime Media III* was an outdoor advertising company that challenged a city ordinance limiting the use of billboards.  *Id.* at 2.  The ordinance

8

expressly limited the size of billboards and also prohibited off-premises signs.  *Id*.  The plaintiff

brought a constitutional challenge to the sign ordinance after Brentwood denied its permit

request on grounds that the signs violated the size and height restrictions and the off-premises

prohibition.[7]  In its initial consideration of the matter, the Sixth Circuit concluded that the size

and height requirements imposed by the city were sufficiently tailored for a content-neutral

regulation and remanded the matter to the district court for consideration of whether the plaintiff

had standing to raise its "First Amendment facial challenge to the entire ordinance, including its

challenge to numerous provisions of the ordinance that [did] not affect [it]."  *Id*. at 3 (citing

*Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 821 (6th Cir. 2005) ("*Prime Media I*").

On remand, the district court dismissed the plaintiff's lawsuit for lack of standing.  It

concluded that the plaintiff no longer met the traditional standing requirement of injury-in-fact

after the Sixth Circuit affirmed the constitutionality of the billboard size and height restrictions,

and that the overbreadth doctrine required that the plaintiff suffer a traditional injury-in-fact to

have standing.  *Id*.  The plaintiff appealed the district court's decision.  On its second

consideration of the case, the Sixth Circuit affirmed the district court's conclusion.

The court explained that standing involves the "two related but distinct inquiries" of

constitutional standing and prudential standing.  *Id*. at 5.  First, "no plaintiff can litigate a case in

federal court without establishing constitutional standing, which requires a showing that the

plaintiff has suffered (1) an injury that is (2) 'fairly traceable to the defendant's allegedly

unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'"  *Id*.  Prudential

---

[7]  After the suit was filed, the City of Brentwood amended its ordinance to eliminate the off-premises exclusion, and the plaintiff modified its complaint to challenge the constitutionality of the size and height restrictions of the revised ordinance.  *Id*. at 2.

standing, on the other hand, does not involve Article III requirements of absolute and irrevocable justiciability but "is a judicially created doctrine relied on as a tool of 'judicial self-governance.'" *Id.* The overbreadth doctrine "only amounts to an exception to the usual prudential standing requirement." *Id.* "[T]he injury in fact requirement still applies to overbreadth claims under the First Amendment." *Id.* (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988)). Thus, even though the plaintiff in *Prime Media* advanced an overbreadth challenge to the ordinance, it was still required to show an injury-in-fact to challenge provisions of the ordinance that were still to be litigated. *Id.*[8]  In other words, in resolving whether a plaintiff has standing to pursue its First Amendment claim, "[t]he critical inquiry is whether the plaintiff can allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code." *Id.* at 6; *see also Advantage Media, LLC v. City of Eden Prairie*, 405 F. Supp. 2d 1037, 1042 (D. Minn. 2005) (finding that an advertising company lacked constitutional standing to challenge defendant's entire sign code when the plaintiff's billboard applications were denied based on time, place, and manner restrictions which the plaintiff did not specifically challenge).

As applied to this case, "the critical inquiry is whether [Norton] can allege an injury arising from the [content-based restrictions] being challenged, rather than an entirely separate rule [the size and placement restriction] that happens to appear in the same section of the municipal code." *Id.* The "content-based" regulatory scheme limiting off-premises advertising

---

[8]  The Sixth Circuit noted that if Prime Media had attempted to produce a billboard which complied with the height and size requirements and applied for a permit, and yet its application was rejected under the other challenged ordinance provisions, there arguably would have been an injury-in-fact.

is embodied in Art. III, § 1, ¶¶ 5 and 14.9 of the Resolution. However, Norton concedes that Pierce applied the content-neutral, "freestanding sign" regulations of Art. III, § 1, ¶ 14.8 to deny its Applications. (Doc. 44 at 2.) Thus, the injury Norton alleges does not arise from the rule that it challenges in its First Amendment claim–the content-based provisions of Art. III, § 1, ¶¶ 5 and 14.9.[9]

Furthermore, because Norton never submitted an application for a billboard that was within the allowable size and height limits, and thus never gave Pierce an opportunity to reject it under the challenged content-based off-premises limitations, Norton cannot allege an injury-in-fact arising from the application of the off-premises limitations. *See*, *e.g.*, *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois*, 9 F.3d 1290, 1291 (7th Cir. 1993) (finding that an advertising company did not have standing to challenge provisions at issue because the sign it wished to erect violated unchallenged sign restrictions). Norton thus does not meet the threshold standing requirement to pursue its First Amendment overbreadth claim concerning the Resolution's content-based regulatory scheme.

Norton's Amended Complaint sets forth a second premise for a First Amendment challenge, namely, that the permitting scheme constitutes an invalid prior restraint on speech. (Doc. 22 ¶ 48.) Pierce urges the Court to find that the Resolution was not an unconstitutional prior restraint on speech because it did not give Township officials excessive discretion. (Doc. 41 at 25.) Norton responds by asserting generally that the Township's permitting and appeals process was "unchecked" and that the Resolution "fails to satisfy even one of the three

_____

[9] Norton argues that its injury (the deprivation of its right to erect standard outdoor advertising billboards) arises from Pierce's wrongful application of the Resolution's content-neutral restrictions, not the content-based off-premises exclusions. (Doc. 44 at 5.)

11

procedural safeguards which are required to allow a prior restraint to survive challenge," citing *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002).  (Doc. 44 at 8.)

Norton's citation to *Thomas* does not advance its position.  To the contrary, *Thomas* stands for the proposition that, while content-based speech restrictions must contain three procedural safeguards in order to avoid constituting an invalid prior restraint,[10] content-neutral permit schemes need not adhere to these procedural requirements.  *Thomas*, 534 U.S. at 322.  The Court expressly noted that "[w]e have never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*.  'A licensing standard which gives an official authority to censor the content of a speech differs *toto coelo* from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like.'"  *Id.* at 322-23 (quoting *Niemotko v. Maryland*, 340 U.S. 268, 282 (1951)).  Accordingly, time, place, and manner restrictions need only "contain adequate standards to guide the official's decision and render it subject to effective judicial review."  *Id.* at 323.  The *Thomas* Court concluded that the challenged ordinance was not an unconstitutional prior restraint because the defendant could deny a permit only for one or more of the reasons set forth in the ordinance, had to process permit applications within 28 days, and had to clearly explain its reasons for any denial.  *Id.* at 324.

---

[10]  The procedural safeguards discussed by the Court were first established by *Freedman v. Maryland*, 380 U.S. 51 (1965), in which the U.S. Supreme Court held that a content-based film licencing process had to contain the following procedural safeguards in order to avoid constituting an invalid prior restraint: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990) (citing *Freedman*, 380 U.S. at 58-60).

Pierce applied the Resolution's content-neutral size and placement sign restrictions to deny Norton's Applications.  Accordingly, the test in examining whether this challenged permitting scheme is an invalid prior restraint on speech is not whether it contains the *Freedman* procedural safeguards, which apply to content-based restrictions, but rather whether it contains adequate standards to guide the official's decision in whether to grant or deny a permit request.

The Court finds that the Resolution provides adequate standards to guide the Inspector in the decision whether to grant or deny a sign permit application based on content-neutral standards–the only standards applied to Norton's Applications.  As in *Thomas*, the Inspector may deny a permit only for one or more of the reasons set forth in the Resolution, such as when a permit seeks to put more than one sign on a lot or the proposed sign is more than thirty feet in height, and the decision is subject to administrative and judicial review.

The ordinance being challenged in *Thomas* differed from the one here in that it required the official to process permit applications within twenty-eight days.  There is no such time restriction in Pierce's Resolution.  However, Pierce denied each of Norton's Applications the same day it was received.  Thus, while Pierce could have delayed the processing of the permit application and thereby arbitrarily suppressed speech, it did not do so in this case, and the Court declines to address a hypothetical constitutional violation.  *See*, *e.g.*, *Granite State Outdoor Advertising, Inc. v. City of St. Petersburg*, 348 F.3d 1278, 1281 (11th Cir. 2003) (applying *Thomas v. Chicago Park Dist.* to its review of a content-neutral sign ordinance and finding that the lack of specific time limits did not confer excessive discretion on city officials).

Norton has failed to demonstrate that it has standing to pursue its First Amendment overbreadth claim with respect to the sign restrictions or that Pierce's permitting scheme is an

13

unconstitutional prior restraint on protected speech in violation of the First Amendment. Accordingly, Pierce's motion for summary judgment as to Norton's First Amendment claims is granted and Norton's motion for partial summary judgment on its First Amendment claims is denied.

### 2.    Equal Protection Claim

Norton claims that Pierce's "content-based regulatory scheme . . . is overbroad and deprives Plaintiff and others of Equal Protection of Law under the Fourteenth Amendment . . . because it discriminates against certain speakers and certain messages." As discussed in the preceding section, Norton did not sustain any injury traceable to the Resolution's content-based provisions, and it did not challenge the validity of the content-neutral provisions Pierce applied to its Applications. Accordingly, Norton lacks standing to bring an equal protection claim arising out of the content-based provisions of the Resolution. Pierce's motion for summary judgment as to Norton's Equal Protection claim is granted and Norton's motion for partial summary judgment on that claim is denied.

### 3.    Due Process Claims

Norton claims that the sign restrictions, permitting scheme, and variance procedure are unconstitutionally void for vagueness, and that the sign restrictions are arbitrary and unreasonable, depriving it of due process of law. Pierce contends that Norton lacks standing to pursue its due process claims because Norton sustained no injury-in-fact pursuant to the off-premises, content-based restriction and, thus, cannot show any causal link between that provision and an injury. (Doc. 41 at 21.) While Norton lacks standing to pursue its First

Amendment claims for the reasons explained above, the same cannot be said of its due process claim.

The premise of Norton's due process claim is that the sign restrictions were drafted in such a manner that it was not clear that Pierce would apply the Resolution's size and placement restrictions to its billboard application.  Accordingly, argues Norton, the arbitrary application of the size and placement restrictions to its permit Applications resulted in the denial of its First Amendment rights and its right under Ohio Rev. Code § 519.20 to erect outdoor advertising on the parcels.  Of the nine sign restrictions enumerated in the subparagraphs of Article III, § 1, ¶ 14, Norton contends that only subparagraph 9 was to be applied to outdoor advertising.  (Doc. 44 at 2.)  Norton argues that the size and height restrictions contained in subparagraph 8 only apply to "freestanding signs," not outdoor advertising.  (*Id*.)

At first blush, it would appear that the precedent of *Prime Media III* would apply to bar Norton's due process claim for the same reason that it applied to bar Norton's First Amendment claim–namely, that Norton's injury stemmed from the Township's application of content-neutral size and placement restrictions that Norton did not specifically challenge.  However, *Prime Media III* is distinguishable on its facts from the instant matter in at least one important aspect: the Brentwood ordinance expressly "limited the size *of billboards* to a face area of 120 square feet and a height of six feet."  *Prime Media III*, No. 05-6343, slip op. at 2 (quoting *Prime Media I*, 398 F.3d at 816).  In this case, while the Pierce Township Resolution specifically limits the quantity and size of "*free-standing" signs*, it does not expressly define "free-standing" signs. (Resolution Art. III, § 1, ¶ 14.8.)

15

The plaintiff's "actual injury" in *Prime Media III* was the rejection of its proposed billboards for failure to meet constitutionally valid size and height requirements that expressly applied to the applications.  Thus, the plaintiff's due process clam was not supported by an independent injury-in-fact.  *Prime Media III*, No. 05-6343 at 4, 7.  In this case, Norton's actual injury is the rejection of its proposed billboards for failure to meet size and height requirements that, allegedly, did not expressly apply to the Applications.  Applying the *Lujan* standing requirements to Norton's due process claim, Norton has alleged an injury-in-fact (the rejection of its billboard applications for failure to meet size and placement requirements that *it did not know applied to its Applications*), causation (Pierce's allegedly arbitrary application of the size and placement restrictions), and redressability (if Norton can prevail on its claim that the size and placement requirements were not intended to apply to billboards, then it might demonstrate that its permits might have been granted).  *Lujan*, 504 U.S. at 560.[11]  Accordingly, Norton has standing to pursue its due process claims against Pierce.

### 4.      Statutory Claim

Pierce argues that Norton does not have standing to challenge the Resolution as violative of Ohio Rev. Code § 519.20 because Norton cannot show an injury-in-fact pursuant to the Resolution's content-based, off-premises exclusion.  Pierce's argument relies on its presumption

---

[11]  The Court is aware that Pierce *might* have rejected the Applications by applying the content-based, off-premises exclusion found in Resolution Art. III, § 1, ¶ 14.9.  However, Norton has expressly challenged the constitutional validity of the off-premises exclusion, and there are no other valid ordinance provisions that Pierce could have applied to deny the Applications.  *Cf. Harp Adver. Illinois, Inc. v. Twp. of Chicago Ridge, Ill.*, 9 F.3d 1290, 1292 (7th Cir. 1993) (finding that the plaintiff advertising company lacked standing to assert a facial challenge to a sign ordinance when "[a]n injunction against the portions of the sign and zoning codes that it has challenged would not let it erect the proposed sign [because] the village could block the sign simply by enforcing another, *valid*, ordinance already on the books.").

that Norton's claim is based only on the content-based provisions of the Resolution.  (Doc. 41 at 42.)  Norton's claim, however, is that Pierce's arbitrary application of the size and height restrictions violated the Code.  For the same reason that Norton has standing to pursue its due process claim, it also has standing to pursue its statutory claim: it has alleged an injury-in-fact (denial of its ability to erect outdoor advertising as expressly permitted by Code § 519.20), causation (the allegedly arbitrary application of the size and placement restrictions), and redressability (if Norton prevails in its claim that the size and placement requirements should not have been applied to billboards, its Applications might have been granted).

### C.    Merits

Having resolved that Norton has standing to pursue its due process and statutory claims, the Court now turns to the merits of those claims.

#### 1.    Due Process

A law or ordinance is void for vagueness, in violation of the due process protected by the Fourteenth Amendment, if its prohibitions are not clearly defined.  The Supreme Court has set forth the following guidelines for determining whether an enactment is unconstitutionally vague: (1) a law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," (2) it "must provide explicit standards for those who apply them" so that it will not be applied in an arbitrary or discriminatory manner, and (3) laws "abut[ting] upon sensitive areas of basic First Amendment freedoms" must not operate to inhibit the exercise of those freedoms.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (analyzing a content-neutral anti-noise ordinance for vagueness and holding that, although imprecise, the ordinance gave "fair notice" of the prohibited activities).

These standards are not to be mechanically applied: "The degree of vagueness that the Constitution tolerates–as well as the relative importance of fair notice and fair enforcement–depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (finding that a village ordinance requiring stores to obtain a license if they sold items that were designed or marketed for use with illegal cannabis or drugs was sufficiently clear that the speculative danger of arbitrary enforcement did not render it void for vagueness). Specifically, economic regulation is subject to a less stringent vagueness test in part because businesses can be expected to consult relevant legislation in advance of their action. *Id.* Additionally, enactments with civil rather than criminal penalties are given more tolerance because the consequences of imprecision are less severe. *Id.*

Norton notes that the Resolution does not define "outdoor advertising" and argues that "the Township's application of the freestanding sign restrictions to Norton's billboard applications was contrary to the clear intent of the Resolution. The only restriction specifically governing outdoor advertising is found in subpart nine [of Art. III, § 1, ¶ 14.]" (Doc. 44 at 2.) It also asserts that the distinction between an outdoor advertising billboard and a typical "pole sign" was "clearly implied." (Doc. 44 at 2 n. 1.)

While the Resolution is not a model of clear drafting, a reasonable person reading Article III, ¶ 14 would be on notice that size and placement restrictions would apply to outdoor advertising that consisted of a sign. Indeed, the opening sentence of that paragraph states that the regulations set forth "*pertaining to signs* are to promote and protect the public health, welfare, and safety of the Township by regulating existing and proposed *outdoor advertising and*

18

*signs of all types*." The Resolution then specifies the permissible elements of signs, even distinguishing between signs mounted to walls (¶ 14.7) and those that are free-standing (¶ 14.8). A reasonable person had fair notice that any sign erected in Pierce Township–whether a billboard or not–would be subject to the enumerated specifications in paragraph 14. In fact, the idea that "wall signs" would be subject to size restrictions and "free-standing signs" would be subject to size restrictions but that billboards, whether affixed to walls or poles, would *not* be subject to any sort of size restriction runs contrary to logic.

Ordinances that the Sixth Circuit has found to be unconstitutionally vague differed from the Pierce Township Resolution in that they completely lacked measurable criteria or explicit standards. For example, an ordinance that gave the mayor the authority to establish a police line if he believed it was necessary to prevent, suppress, or contain an event that might become a public disturbance was unconstitutionally vague because it failed to provide a clear standard to guide the discretion of the mayor. *Leonardson v. City of East Lansing*, 896 F.2d 190, 197 (6th Cir. 1990). Specifically, the court found that there was "nothing to prevent the use of the Ordinance prospectively against activities that are entitled to protection under the First Amendment," and the lack of sufficiently explicit standards impermissibly allowed the mayor "to inhibit the exercise of First Amendment freedoms by enforcing the Ordinance in an arbitrary and discriminatory manner." *Id*. at 197-98, 198. Similarly, the Sixth Circuit found that a putative advertiser was substantially likely to succeed on the merits of its facial challenge to a state transportation agency's advertizing policy which prohibited "controversial" ads that adversely affected the agency's ability to attract and maintain its bus ridership. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341

19

(6th Cir. 1998).  The court found that, because the policy did not require a demonstrable causality between an advertisement's controversial nature and SORTA's interests, the policy invited "subjective or discriminatory enforcement" by permitting the decision maker to speculate as to the potential impact of the advertisement on ridership.  *Id*. at 360.

The above-cited cases differ from the instant matter in that sign size, height, and placement limitations are expressly established in the statute.   These are measurable criteria that apply to "outdoor advertising and signs of all types," as the predicate sentence to paragraph 14 explains.  Additionally, applying the reasoning of *Flipside*, the Pierce Township Resolution is entitled some "tolerance" because it is expected that a business like Norton would consult the legislation in advance of its action, and there are no criminal penalties associated with any violation.  455 U.S. at 498.  Given these factors, the Court finds that the sign restrictions and permitting scheme are not unconstitutionally vague.

Norton also claims that Pierce's application of the sign restrictions was arbitrary and unreasonable in violation of due process of law, and it refers the Court to the unreported Ohio appellate case of *Hasman v. Genesis Outdoor, Inc.*, No. 2002-G-2416, 2003 WL 680175 (Ohio App. Feb. 28, 2003) to support its position.  In *Hasman*, the court concluded that a township could not reclassify a billboard erected under a use variance as a "ground sign" and then arbitrarily apply a zoning resolution restricting the size of ground signs.  *Id*. at *2.  The ordinance at issue in *Hasman* prohibited billboards altogether and, separately, limited "ground signs" to one hundred square feet of surface area.  *Id.* at n. 3.  The Township granted the outdoor advertising company a variance from the billboard prohibition but then argued that the advertising company was required to comply with the ground sign restrictions.  *Id*. at *2.  The

court determined that the township's effort to classify the billboard as a ground sign was "merely another attempt to prevent the company from constructing a billboard within the township's jurisdiction." *Id*.  Guiding the court to its decision was the fact that "[t]he township zoning resolutions clearly treat billboards and ground signs differently; i.e., one is entirely prohibited while the other one is simply restricted in size. . . .  More to the point, because billboards were previously prohibited, there is no logical reason to assume that billboards and ground signs were, nevertheless, interchangeable, or that the restrictions applicable to one would also be applicable to the other." *Id*. at *3.  *Hasman* is distinguishable from the instant matter in that the Pierce Township Resolution does not prohibit billboards and, therefore, does not "clearly treat billboards and [freestanding signs] differently."  Rather, the Resolution sets forth size and placement restrictions pertaining to wall signs and freestanding signs, either of which logically might apply to billboards.  Thus, the reasoning behind the *Hasman* court's conclusion that the township's application of size restrictions to the advertising company's billboards was arbitrary is not applicable to this case.

Norton has failed to demonstrate that there is a question of fact as to whether the Resolution is sufficiently clear that a person of ordinary intelligence would be on notice that size restrictions applied to billboards, whether it provides explicit standards for the Zoning Inspector and the Board of Zoning Appeals, or whether it inhibits the exercise of First Amendment freedoms.  *See Grayned*, 408 U.S. at 108.  Norton also has failed to demonstrate that there is a question of fact as to whether Pierce's application of the Resolution's provisions was unconstitutionally arbitrary and unreasonable.  Accordingly, summary judgment for Pierce is

proper on Norton's federal and state due process claims concerning the sign restrictions and the permitting scheme.

Norton separately claims that the variance procedures articulated in Resolution Art. XIV, § 4, ¶ 2 violate its right to due process.  Pierce argues that this claim must fail because the Resolution's variance procedure mirrors the standards set forth by Ohio Revised Code § 519.14.[12]  This Court recently validated a substantially similar provision in another Ohio township's zoning resolution, finding that the zoning board's discretion to grant a variance was not unfettered.  *Midwest Media Property, L.L.C. v. Symmes Twp., Ohio*, No. 1:04cv604 (S.D. Ohio May 22, 2006).  "Rather," the Court found, "the provision authorizing variances . . . allows deviation only when 'a literal application of the provisions of the Resolution will result in unnecessary hardship.' . . .  Far from arbitrary application, the applicable provisions require that the authorized officials act within a narrow set of guidelines and enforce the spirit of the Zoning Resolution at all times."  *Id*., slip op. at 4.  The reasoning of *Midwest Media* applies here, and summary judgment in Pierce's favor is appropriate with respect to Norton's federal and state due process claims concerning the Resolution's variance procedure.

### 2.    Statutory Claim

---

[12]  Ohio Rev. Code § 519.14(B) provides that a township board of zoning appeals may "[a]uthorize, upon appeal, in specific cases, such variance from the terms of the zoning resolution as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done."

Resolution Art. XIV, § 4, ¶ 2 permits the Pierce Township Board of Zoning Appeals "[t]o authorize, upon appeal, in specific cases, such variance from the terms of the Zoning Resolution, as will not be contrary to public interest, where owing to special conditions a literal enforcement of the provisions of the Resolution will result in unnecessary hardship, and so that the spirit of the Resolution shall be observed and substantial justice done."

Norton correctly asserts that an Ohio township must allow for outdoor advertising in business and industrial zones.  Ohio Rev. Code § 519.20.  Norton argues that by applying the "freestanding sign" size and height restrictions to outdoor advertising that Pierce has "effectuated a total ban on outdoor advertising."  (Doc. 44 at 2.)  However, Norton does not set forth any facts to demonstrate the veracity of this argument.  While requiring townships to permit outdoor advertising in industrial districts, Section 519.20 does not forbid townships from regulating that advertising.  *Foster & Kleiser v. Springfield Twp. Bd. of Zoning Appeals*, No. 12272, slip op. at 2 (Ohio Ct. App. Feb 12, 1986).

To prove its assertion, Norton would have to "present evidence that the resolution prohibits all viable types of outdoor advertising, not just those [Norton] uses."  *Id*.  It has presented no such evidence.  It has instead resorted to an argument that "standard billboards" such as those Norton uses are of a size greater than that permitted by Pierce's TPM restrictions. It does not submit evidence that "standard billboards" are the only viable type of outdoor advertising.[13]  Norton has failed to demonstrate a triable issue of fact pertaining to its claim that the Resolution violates Rev. Code § 519.20, and summary judgment in Pierce's favor is appropriate.

### C.    Mootness and Damages

Because Norton has failed to demonstrate that a genuine issue of fact remains as to those claims for which it has standing, the Court need not reach Pierce's additional arguments that Norton's claims are mooted by Pierce's April 2005 amendments to the Resolution, which

---

[13]  The expert report of Suzanne E. Lee, Ph.D., submitted by Norton in support of its motion, does not address the viability of different sizes of billboards.  (*See* doc. 33.)

retained revised size and placement restrictions and eliminated the off-premises exclusion, and that Norton is not entitled to attorney fees.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge